# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TRUTHOUT, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:12-cv-01660 (RMC) |
| | * | |
| DEPARTMENT OF JUSTICE, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Plaintiffs Truthout and Jeffrey Light brought this case against Defendant Department of Justice under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, to compel the Federal Bureau of Investigation ("FBI") to release records about the "Occupy" protest movements and FBI's processing of one of Truthout's FOIA requests. (Compl. ¶¶ 8, 10, 18, 29, 35.) On 1 February 2013 FBI[1] filed a Motion for Summary Judgment under Rule 56(a) of the Federal Rules of Civil Procedure.[2]

---

[1] Even though the proper party defendant is the Department of Justice, since the only records at issue are FBI records, FBI will be identified as the defendant herein for ease of reference.

[2] FBI also makes a half-hearted claim that its production of documents after Plaintiffs filed their Complaint renders this case moot under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, but this argument has been consistently rejected by courts and is not worth opposing in any level of detail. *See, e.g., Nw. Univ. v. USDA*, 403 F. Supp. 2d 83, 86 (D.D.C. 2005) (finding no mootness despite belated release of documents because plaintiff challenged adequacy of defendant's document production); *Boyd v. U.S. Marshals Serv.*, No. 99-2712, 2000 U.S. Dist. LEXIS 14025, at *2 (D.D.C. Sept. 25, 2000) (refusing to dismiss case despite fact that all responsive, nonexempt records were released, because agency "[has] yet to explain [its] redactions or withholdings"); *Looney v. Walters-Tucker*, 98 F. Supp. 2d 1, 3 (D.D.C. 2000) (refusing to dismiss case as moot where all records located as responsive were produced,

## BACKGROUND

### Factual Background

There are three brief factual issues which need to be identified before any further discussion of this Motion can continue.  First, FBI alleges that it mailed Truthout a letter dated 24 April 2012, which stated that it had identified and withheld one record responsive to FOIA Request No. 1182695-000.  (Hardy Decl., Dkt. #9-1, ¶ 46; Ex. II, Dkt. #10-35.)  Jason Leopold, Lead Investigative Reporter for Truthout and the only person who collects mail at the address to which FBI allegedly mailed this letter, never received the letter.  (Leopold Decl. ¶¶ 4-5, attached as Ex. A.)  The first time Truthout learned of this letter was when it was attached to the Hardy Declaration as Exhibit II.  (*Id.* ¶ 4.)  (*See also* Compl. ¶ 31 ("As of this writing FBI has not issued a final determination for this request."); Email from McClanahan to Nebeker of 2/2/13 (Plaintiffs' counsel informing FBI's counsel that the letter came as a complete surprise, citing to an earlier unanswered email asking about results of request in question), attached as Ex. B.)[3]

Second, several of the records at issue in this case were previously released to two other requesters by FBI well before FBI released them to Plaintiffs.  On 24 August 2012 FBI released thirteen pages to the ACLU of Northern California ("ACLU-NC") in response to its FOIA Request No. 1184877-000, filed 8 March 2012.  (Letter from Lye to FBI of 3/8/12, attached as Ex. C; Letter from Hardy to Lye of 8/24/12, attached as Ex. D.)  Eleven of these released pages

---

because "[i]n a FOIA case, courts always have jurisdiction to determine the adequacy of search"), *aff'd per curiam sub nom. Looney v. FDIC*, 2 Fed. Appx 8 (D.C. Cir. 2001).

[3] This is relevant because, even though FBI has not raised a "failure to exhaust administrative remedies" defense, the Court can consider failure to exhaust *sua sponte*, and so Truthout is offering sworn testimony that it did not file an administrative appeal because it never received word that a determination had been made.  Had it received this letter, it would have filed an appeal.  (Leopold Decl. ¶ 5.)

were subsequently released to Plaintiffs.  On 18 December 2012, FBI released 99 pages to the

Partnership for Civil Justice Fund ("PCJF") in response to its FOIA Request No. 1178231-000,

filed 16 November 2011.  (Letter from Verheyden-Hilliard to DOJ of 11/16/11, attached as Ex.

E; Letter from Hardy to Verheyden-Hilliard of 12/18/12, attached as Ex. F.)  97 of these released

pages were subsequently released to Plaintiffs.[4]

Third, the same two pages, discussing an Occupy Oakland protest, were released to both

ACLU-NC and PCJF but were neither released to nor withheld from Plaintiffs.  (*Compare* Coast

Guard Message, attached as Ex. G, *with* Ex. SS, Dkt. #10-45 (coded release).)  This document

does not appear in FBI's release, and it does not fit the description of any pages withheld in full

(*see* Hardy Decl. ¶¶ 136-37).  It simply seems not to have been identified and/or processed.

### Statutory Background and Standard of Review

Plaintiffs accept FBI's recitation of the Standard of Review, but elaborate, "An agency

cannot meet its statutory burden of justification by conclusory allegations of possible harm.  It

must show by specific and detailed proof that disclosure would defeat, rather than further, the

purposes of FOIA."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 258 (D.C.

Cir. 1977).  "An affidavit that contains merely a 'categorical description of redacted material

coupled with categorical indication of anticipated consequences of disclosure is clearly

inadequate.'"  *PHE, Inc. v. DOJ*, 983 F.2d 248, 250 (D.C. Cir. 1993), quoting *King v. DOJ*, 830

F.2d 210, 224 (D.C. Cir. 1987).  "[T]he affidavits must show, with reasonable specificity, why

the documents fall within the exemption.  The affidavits will not suffice if the agency's claims

are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."

*Hayden v. NSA/CSS*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (footnote omitted).  "The [D.C.]

---

[4] The significance of this fact is discussed in Part V below.

Circuit, though expressly disclaiming any attempt to provide 'an encompassing definition of *conclusory assertions*,' noted that 'it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label *conclusory* is surely apt.'" *Jarvik v. CIA*, 741 F. Supp. 2d 106, 120 (D.D.C. 2010), quoting *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987).

## ARGUMENT

### I.     FBI FAILED TO CONDUCT AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

"[A]n agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.").  However, an agency may not "ignore what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it."   *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996).

The search must be conducted in good faith using methods that are likely to produce the information requested.  *See Campbell v. DOJ,* 164 F.3d 20, 27 (D.C. Cir. 1998).  "While there is no requirement that an agency search every record system, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Jefferson v. DOJ*, 168 Fed. Appx. 448, 450 (D.C. Cir. 2005) (internal quotation and alteration omitted), quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  *See also Nat'l Day Laborer Org. Network v. Immigration & Customs Enforcement Agency*, No. 12-3488, 877 F.

Supp. 2d 87, 98 (S.D.N.Y. 2012) (holding that "the government is not required to search only the files of the . . . custodians who are 'most likely' to have responsive records; it must also search other locations that are reasonably likely to contain records"), citing *Oglesby*, 920 F.2d at 68. Agencies have a duty to construe the subject material of FOIA requests liberally to ensure responsive records are not overlooked. *See Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). An agency may not "read [a] request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985). "[A]ll federal agencies should go as far as they reasonably can to ensure that they include what requesters want to have included within the scopes of their FOIA requests." Department of Justice, Office of Information Privacy, *OIP Guidance: Determining the Scope of a FOIA Request*, FOIA Update, Vol. XVI, No. 3, at 4 (1995). *See also Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 499 (S.D.N.Y. 2010) (rejecting CIA's argument that its search for records about the "attention shake" interrogation technique was adequate because it located no records due to the technique being called the "attention grasp").

Further, while Plaintiffs concede that an agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the records," *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam), this does not mean that a court cannot find an agency's search to be inadequate based in part on its failure to locate certain records. "Evidence that relevant records have not been released may shed light on whether the agency's search was indeed inadequate." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). In other words, not all "claims about the existence and discoverability of other documents" are "purely

speculative." *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  For

instance, "[w]here specific records . . . are referenced in [agency] documents, it is no longer

'mere speculation' that the files exist." *Hall v. CIA*, No. 04-814, 2012 U.S. Dist. LEXIS 108503,

at *36 (D.D.C. Aug. 3, 2012).

FBI searched *one* records system—the "Central Records System" ("CRS")—in response

to Plaintiffs' requests.  (Hardy Decl. ¶¶ 65-66.)  FBI possesses several records systems, including

the Electronic Surveillance ("ELSUR") and Physical Surveillance ("FISUR") indices, an agency-

wide email system, and several shared drives used by FBI Headquarters and field offices.  In

addition, some FBI field offices issue "ticklers" which are not normally searched despite the case

law on the matter.[5]  Jeffrey Light specifically indicated that records were likely to be located in

several of these systems and asked that they be searched (*see* Email from Light to FBI of

11/16/11, Dkt. #10-18), and both Plaintiffs made it clear that they were seeking a wide

assortment of records, including, most notably, emails.  In light of these clear instructions in "the

four corners of the request," *Kowalczyk*, 73 F.3d at 389, and the controlling case law in this area,

FBI's cursory decision to limit its search to the CRS is inexplicable (especially given the focus of

several of the requests on emails), and the Court should remand these requests to FBI for a

complete search.  *See*, *e.g.*, *Campbell*, 164 F.3d at 28 ("[I]n most cases, the FBI need not conduct

---

[5] "A 'tickler' is a duplicate file containing copies of documents, usually kept by a supervisor.
Such files can be of interest to a FOIA requester because they could contain documents that
failed to survive in other filing systems or that include unique annotations." *Schrecker v. DOJ*,
254 F.3d 162, 164 (D.C. Cir. 2001).  In many cases FBI has found responsive ticklers and the
D.C. Circuit has held that FBI is required to search for ticklers, at least in cases where a
requester specifically asks for them.  *Id.* at 165.

ELSUR . . . searches *when the FOIA requester does not expressly ask it to do so.*") (emphasis added).[6]

The Hardy Declaration not only fails to explain why FBI did not search any of these systems or files, it completely fails to explain what the systems and/or files *are* and how they are indexed or searched.  As a result, the Court lacks a factual foundation from which to determine whether the FBI's search was reasonable.  Accordingly, FBI should be compelled to produce a more detailed explanation of each system and/or file listed in Light's request and to explain why the systems it did not search are unlikely to produce responsive records.  *See Rosenfeld v. DOJ*, No. 07-3240, 2008 U.S. Dist. LEXIS 64620, at *39-40 (N.D. Cal. Aug. 22, 2008) ("The general nature of the description contained within the affidavit combined with the lack of explanation about other electronic databases beyond the CRS necessitates a more detailed declaration.  . . . To the extent certain databases were not searched, defendants omitted to explain the primary purposes of those databases, so the court cannot assess if it was reasonable for defendants to exclude them from the search.").[7]

Moreover, in addition to the two-page document—Ex. G—that FBI released to ACLU-NC and PCJF but did not process for release in Plaintiffs' requests, there exists material evidence that responsive records exist which were not produced.  For instance, FBI sent an official response to the *Huffington Post* on or around 18 November 2011, stating: "Recent

---

[6] In the interest of judicial economy, Truthout has voluntarily elected to not challenge the adequacy of FBI's search regarding Request No. 1182695-000.  This decision was made for purely logistical reasons and is not a concession that FBI's search was adequate.  Truthout still maintains that the search was patently inadequate, but, given that FBI is unlikely to possess more than five documents responsive to this request in any case, the cost of arguing the issue significantly outweighs the benefit of winning the argument.

published blogs and news stories have reported the FBI has coordinated with local police departments on strategy and tactics to be employed in addressing Occupy Wall Street protestors. . . . These reports are false. At no time has the FBI engaged with local police in this capacity." Simon McCormack, *Occupy Wall Street Crackdowns: Was The Federal Government Involved?*, Huffington Post, Nov. 18, 2011, *at* http://www.huffingtonpost.com/2011/11/18/occupy-wall-street-crackdowns_n_1101685.html (last accessed Apr. 2, 2013).  Regardless of whether or not this statement is accurate, in the context of this case it begs the question, "Where are the records of this statement and the research the author conducted prior to issuing it?"  When the subject of a request is a topic which, as FBI concedes, "has been widely publicized" (Hardy Decl. ¶ 66 n.5), a failure to search those offices responsible for legislative and press relations is unreasonable.

        As another example, the Department of Homeland Security released an email through FOIA to Truthout which included the sentence, "The FBI New York Field Office's Duty Agent reported to me this evening that the OWS crowd wants to stage at 26 Federal Plaza and that signs are being put up around Lower Manhattan calling for the demo (NFI as to the purpose of this OWS demo)."  (DHS email of 10/23/11, attached as Ex. H.)  Not only is there no record of this communication in FBI's release, there is no mention of *the demonstration*.  26 Federal Plaza is, among other things, the address of *the FBI New York Field Office*.  It defies credulity that there would be an organized demonstration *at an FBI Field Office* by a group FBI *is investigating*, and yet FBI has no records about it.  At the very least, the mere fact of this demonstration should be reason enough to order FBI to search the New York Field Office, if nowhere else.

---

[7] Should FBI file a Second Hardy Declaration with its Reply further defending its search, the Court should afford Plaintiffs a chance to respond in a Sur-Reply.

Lastly, as the released records show, some of them were distributed to particular FBI offices or systems, yet none of those offices or systems were searched for *other* responsive records.  For instance, one record was distributed to: "Production Services Unit, Directorate of Intelligence[;] LEO[8] FIG SIG[;] . . . FBI Intranet[; and] Indiana Intelligence Fusion Center." (Ex. SS at 5.)  Another record was distributed to "Deputy Assistant Director, Directorate of Intelligence[;] Deputy Assistant Director, Criminal Investigative Division[;] Deputy Assistant Director, Cyber Division[;] Editorial Review Unit, Directorate of Intelligence[;] FBI Intranet[;] LEO[;] Virginia Fusion Center[; and] Infragard.[9]"  (Ex. SS at 176.)  These two pages describe ten offices or systems which are *known* to contain at least some records about Occupy, and yet none of them were searched to see if they contained others.[10]

For the foregoing reasons, the Court should find that FBI failed to conduct an adequate search for responsive records.

## II.     FBI IMPROPERLY WITHHELD INFORMATION

As a preliminary note, Plaintiffs have voluntarily elected not to challenge many of FBI's withholdings, without conceding the legal validity of those determinations.  Plaintiffs are *not* challenging:

---

[8] LEO stands for Law Enforcement Online, "a secure, Internet-based communications portal for law enforcement, first responders, criminal justice professionals, and anti-terrorism and intelligence agencies around the globe."  *Law Enforcement Online*, at http://www.fbi.gov/about-us/cjis/leo (last accessed Apr. 2, 2013).

[9] InfraGard is an FBI program assigned to the FBI Cyber Division.  *About InfraGard*, at http://www.infragard.net/about.php?mn=1&sm=1-0 (last accessed Apr. 2, 2013).

[10] Of all of these offices and systems, the most obvious candidates to have responsive records appear to be the Fusion Centers and the systems designed for information dissemination and sharing, like the FBI Intranet, LEO, and InfraGard.

- All invocations of Exemption (b)(1), 5 U.S.C. § 552(b)(1);

- Invocations of Exemption (b)(3), *id.* § 552(b)(3), citing Fed. R. Crim. P. 6(e), to withhold information identifying records subpoenaed by a grand jury;

- Invocations of Exemption (b)(3), citing the Bank Secrecy Act or 10 U.S.C. 130b;

- All invocations of Exemptions (b)(6), 5 U.S.C. § 552(b)(6), (b)(7)(C), *id.* § 552(b)(7)(C), or (b)(7)(D), *id.* § 552(b)(7)(D), except as noted below;

- All invocations of Exemptions (b)(7)(A), *id.* § 552(b)(7)(A), with the understanding that only information about *open* investigations has been withheld;[11]

- Invocations of Exemption (b)(7)(E), *id.* § 552(b)(7)(E), to withhold the location and identity of FBI Units or case file numbers; and

- Redactions of information as "not responsive" or "beyond the scope."

Conversely, Plaintiffs *are* challenging:

- Invocations of Exemption (b)(3), citing Fed. R. Crim. P. 6(e), to withhold administrative information on subpoenas;

- The invocation of Exemption (b)(5), 5 U.S.C. § 552(b)(5);

- Invocations of Exemptions (b)(6), (b)(7)(C), or (b)(7)(D) for which Plaintiffs have provided privacy waivers; and

- Invocations of Exemption (b)(7)(E) to withhold other "investigative techniques and procedures."

---

[11] "The FBI has applied Exemption (b)(7)(A) to protect the file numbers and names of these open investigations." (Hardy Decl. ¶ 124.) If it later turns out that information about closed investigations was also withheld, Plaintiffs will seek leave of the Court to rebrief this issue.

**A.      Exemption (b)(3) – Fed. R. Crim. P. 6(a)**

This Circuit "has consistently held that Rule 6(e) does not draw a 'veil of secrecy' over all documents about activity investigated by the grand jury or even all documents revealed to the grand jury." *Wash. Post Co. v. DOJ*, 863 F.2d 96, 99 (D.C. Cir. 1988), quoting *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 993 (1980).  "The relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation."  *Wash. Post*, 863 F.2d at 99, citing *Fund for Constitutional Gov't v. Nat'l Archives*, 656 F.2d 856, 869-70 (D.C. Cir. 1981).

While information about the records subpoenaed by a grand jury may be exempt, the administrative portions of the subpoenas (i.e., what remains after the information about the requested records are redacted) are not.  Such information, such as when and where a subpoena for unknown records was issued, does not "reveal the inner workings of the grand jury." Therefore, FBI should be required to segregate administrative information from substantive information, and release the former while withholding the latter.

As an aside, there is one Exemption (b)(3) redaction identified in the coded release but not identified in the Hardy Declaration which appears not to be properly coded (although the exemption itself is consistent with the earlier release).  The line reads, "The regular November meeting of the BFWG was held at <redacted> Littleton, Colorado."  (Ex. SS at 196.)  The redaction is marked "b3-1," FBI's code for grand jury information.  With no further information about this redaction, Plaintiffs cannot refute it with any degree of particularity, except to point out that the meeting place of a group seems unlikely to pertain to grand jury subpoenas.

### B.      Exemption (b)(5)

FBI has invoked the deliberative process privilege to withhold the entire administrative

processing file for a FOIA request.  Such an overextension of this privilege is extreme even for

FBI, especially in light of the fact that the information in this page pertains to the searches FBI

performed, the material it withheld, and the responses it made to Truthout—in other words, the

information included in the Hardy Declaration's discussion of the processing of Request No.

1176937-001.  A sample of the type of information included in these notes is attached as Ex. I

for the Court's review.  It is unreasonable for FBI to argue that, between the banal nature of this

information in the first place and the fact that Mr. Hardy has already informed the Court of the

way in which FBI conducted its search, no reasonably segregable information could be released

from this responsive page.

### C.      Exemptions (b)(6), (b)(7)(C), and (b)(7)(D)

Since filing this lawsuit, Plaintiffs have given FBI signed privacy waivers for nine

additional individuals, and FBI has agreed to reprocess the records at issue in this case and

release any information about those individuals.  The signed privacy waivers are being filed with

a Motion to Seal to protect the identity of those individuals, who have only authorized FBI to

release information about them *to Plaintiffs*, not to file it on the public record.  Should the Court

order FBI to perform an additional search, Plaintiffs expect that FBI will continue to act under

the authorization of these privacy waivers.

### D.      Exemption (b)(7)(E)

Exemption (b)(7)(E) allows an agency to withhold information if production would

"disclose techniques and procedures for law enforcement investigations or prosecutions, or

would disclose guidelines for law enforcement investigations or prosecutions if such disclosure

could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

However, Exemption (b)(7)(E) does not exempt *all* investigative techniques and procedures

from disclosure; it is limited to techniques and procedures unknown to the public.  *See*, *e.g.,*

*Albuquerque Publ'g Co. v. DOJ,* 726 F. Supp. 851, 858 (D.D.C. 1989) (ordering agency to

explain further why certain techniques are considered unknown to the public); *Jaffe v. CIA*, 573

F. Supp. 377, 387 (D.D.C. 1983) (exemption applies to information regarding "obscure or secret

techniques"); *Dunway v. Webster*, 519 F. Supp. 1059, 1082-83 (N.D. Cal. 1981) (exemption is to

be applied only to techniques and procedures generally unknown to the public and, absent any

explanation from the government, court would not assume that disclosure would result in

revelation of investigative techniques which were so unique as to warrant exemption).

   FBI withheld information from *340 pages* under this exemption, but only defends its use

in eight boilerplate lines which merely parrot the statutory language and case law:

> Exemption (b)(7)(E)-1 has been asserted to protect procedures and techniques used by FBI agents to conduct national security investigations.  Disclosure of this information could enable subjects of FBI investigations to circumvent similar currently used techniques and procedures by law enforcement.  The relative benefit of these techniques and procedures could be diminished if the actual techniques and procedures were revealed in these records.  This in turn could facilitate the accumulation of information by other investigative subjects regarding the circumstances under which these techniques and procedures were used or requested and the value of the information obtained.

Not only has FBI not met its burden of adequately demonstrating that the controverted

information pertains to law enforcement methods *unknown to the public*, it hasn't provided *any*

information about *any* of the withheld information.[12]  When it comes to this paragraph, "the

label *conclusory* is surely apt."  *Senate of Puerto Rico*, 823 F.2d at 585.

---

[12] Of particular interest is the implication that the administrative processing notes for a FOIA request contain "obscure or secret techniques," the disclosure of which "could reasonably be

For the foregoing reasons, the Court should deny summary judgment with respect to the withholdings Plaintiffs have challenged.

## III.    FBI FAILED TO RELEASE REASONABLY SEGREGABLE MATERIAL

"Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "This rule of segregation applies to all FOIA exemptions."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."  *Id.*

To meet its burden, FBI must provide a "statement of its reasons" for not segregating and "describe what proportion of the information is non-exempt and how that material is dispersed throughout the document."  *Mead Data Cent.*, 566 F.2d at 261.  "Conclusory language in agency declarations that does not provide a specific basis for segregability findings by a district court may be found inadequate."  *Judicial Watch v. Dep't of the Treasury*, 2011 U.S. Dist. LEXIS 74121, at *34, (D.D.C. July 11, 2011), citing *Animal Legal Def. Fund, Inc. v Dep't of the Air Force*, 44 F. Supp. 2d 295, 301 (D.D.C. 1999).

FBI's only concession to the segregability requirement is the repeated tautological statement that all reasonably segregable material has been released.  (Hardy Decl. ¶¶ 68-69, 72, 128, 138.)  In the face of such conclusory language, unsupported even by a proper *Vaughn* index, "the Court must therefore conclude that defendants have not demonstrated that the factual information in the documents is not reasonably subject to segregation . . . [and] order [FBI] . . .

---

expected to risk circumvention of the law."  It is also questionable that analysts' processing materials were compiled for a law enforcement purpose.  Nevertheless, FBI asserts that that page

to release the challenged documents or submit an amended *Vaughn* index concerning them."

*Wilderness Soc'y v. Dep't of the Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004).

## IV.    FBI CANNOT EXCLUDE OTHERWISE RESPONSIVE INFORMATION

It is unknown if FBI has invoked any of the "exclusions" included in 5 U.S.C. § 552(c) to

consider otherwise responsive records "not subject to FOIA."  However, if it has, such a

determination is in violation of FOIA.

FBI must clarify with the Court whether or not it has excluded any records under 5

U.S.C. § 552(c).  The Court should insist that as much of that clarification is on the public record

as possible, so as to allow Plaintiffs a chance to competently oppose it.

## V.    FBI ARBITRARILY AND CAPRICIOUSLY DELAYED ITS RELEASE OF CERTAIN RECORDS

This case presents an unusual confluence of legal principles, coupling FOIA's provision

regarding sanctions against wayward agency employees with the case law equating delayed

release with denied release.

> Whenever the court orders the production of any agency records improperly
> withheld from the complainant and assesses against the United States reasonable
> attorney fees and other litigation costs, and the court additionally issues a written
> finding that the circumstances surrounding the withholding raise questions
> whether agency personnel acted arbitrarily or capriciously with respect to the
> withholding, the Special Counsel shall promptly initiate a proceeding to
> determine whether disciplinary action is warranted against the officer or
> employee who was primarily responsible for the withholding.

5 U.S.C. § 552(a)(4)(F)(i).

Furthermore, "As the Supreme Court has made clear, public awareness of the

government's actions is a structural necessity in a real democracy.  Not only is public awareness

a necessity, but so too is *timely* public awareness.  For this reason, Congress recognized that

---

of notes is covered by this exemption.  (*See* Ex. SS at 197.)

delay in complying with FOIA requests is tantamount to denial." *Elec. Privacy Info. Ctr. v. DOJ*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006). *See also Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("Stale information is of little value."); *Nat'l Sec. Counselors v. CIA*, No. 11-443, 2012 U.S. Dist. LEXIS 149073, at *54 (D.D.C. Oct. 17, 2012) ("FOIA was intended to promote not merely disclosure, but *timely* disclosure.").

Taken together, these two principles create a scenario in which the Court may "issue[ ] a written finding that the circumstances surrounding the [delayed release of information] raise questions whether agency personnel acted arbitrarily or capriciously with respect to the [delay]," and that such a finding, coupled with an order to release any information so delayed and an award of costs and attorneys' fees, would trigger an Office of Special Counsel investigation. Such would be an appropriate remedy in this case.

As discussed above, despite granting expedited processing to two of Plaintiffs' requests (Hardy Decl. ¶¶ 36, 55), which requires the agency to release non-exempt records "as soon as practicable," *see* 5 U.S.C. § 552(a)(6)(E)(iii), FBI released records responsive to Plaintiffs' requests to ACLU-NC in August 2012 and to PCJF in December 2012, but did not release them to Plaintiffs until January 2013. Moreover, Plaintiffs' requests were filed *before* either of the other two organizations' requests. The evidence suggests that, for whatever reason, one or more FBI FOIA employees arbitrarily and capriciously delayed releasing records to Plaintiffs while releasing them to other requesters who filed *later* requests, instead of making interim releases to Plaintiffs at the same time as records were released to the other requesters in keeping with the requirement that they release non-exempt records "as soon as practicable." Furthermore, FBI appears to have been cognizant of the fact that Plaintiffs requests were partially duplicative of

the ACLU-NC and PCJF requests.[13]  (*See* Hardy Decl. ¶ 4 n.3 ("The majority of records responsive to plaintiffs' requests were released from a pre-processed case.").)  In addition, *after* releasing the records to PCJF, the undersigned confronted FBI's counsel about it, stating:

> You can imagine my dismay when I saw this: http://www.justiceonline.org/commentary/fbi-files-ows.html
>
> Please explain why, when no less than *three* of the FOIA requests in our case predated the Partnership for Civil Justice request, records were released to them and not released to my clients.  While I concede that some of our requests were broader than theirs, the first two Truthout requests were *significantly* narrower, and in any case, if the FBI had records ready to release, there is no reason for them not to have made an interim release to Truthout or Mr. Light.  This smacks of retaliation for filing this suit, and my clients are decidedly not happy about it.

(Email from McClanahan to Nebeker of 12/27/12, included in Ex. K.)  FBI's counsel responded, "I hope to address all of your concerns in the above matter in our upcoming filings in the case" (Email from Nebeker to McClanahan of 1/9/13, attached as Ex. K), and then said absolutely nothing in FBI's filings justifying the disparate treatment.

To be clear, the Court would not have to find that FBI personnel *acted* arbitrarily and capriciously with respect to this delay, only that the circumstances *raise questions* whether agency personnel acted arbitrarily or capriciously with respect to this delay.  The evidence shows that: 1) both Truthout and Light submitted their requests before ACLU-NC or PCJF; 2) both Truthout and Light were granted expedited processing by FBI; 3) ACLU-NC publicly referenced one of Truthout's requests in its complaint filed a month before the first release; and 4) FBI released records not once but twice to other requesters before releasing them to Plaintiffs.  Given

---

[13] Technically speaking, the ACLU-NC and PCJF requests were duplicative of *Plaintiffs'* requests, since Plaintiffs' requests were filed first.  ACLU-NC's complaint in the case *ACLU of Northern California v. FBI*, No. 12-3728 (N.D. Cal.), which it filed on 17 July 2012, six weeks before FBI released records to it, even included an FBI acknowledgement letter of Truthout's Request No. 1176937-001 as an exhibit.  Compl. at 17, *id.*, attached as Ex. J.

these facts, the circumstances definitely raise questions whether agency personnel acted

arbitrarily or capriciously with respect to this delay, and the Court should refer FBI to the Office

of Special Counsel for an investigation.

## **CONCLUSION**

For the foregoing reasons, FBI's Motion for Summary Judgment should be denied.

Date:   April 3, 2013

<div style="margin-left: 40%">

Respectfully submitted,

 /s/ Kelly B. McClanahan<u>      </u>
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

TRUTHOUT, *et al.*,                          *
                                             *
           Plaintiffs,                       *
                                             *
           v.                                *        Civil Action No. 1:12-cv-01660 (RMC)
                                             *
DEPARTMENT OF JUSTICE,                       *
                                             *
           Defendant.                        *
                                             *
*      *      *      *      *      *      *      *      *      *      *      *      *

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Civil Rule 7(h) of the Rules of the United States District Court for the

District of Columbia, Plaintiffs hereby submit the following response to Defendant's Statement

of Material Facts as to Which There Is No Genuine Issue.

1.      Admit.

2.      Deny.  The Hardy Declaration only describes one records system.

3.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the

Hardy Declaration in this respect.

4.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the

Hardy Declaration in this respect.

5.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the

Hardy Declaration in this respect.

6.      Deny.  The FBI's search was inadequate.

7.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the

Hardy Declaration in this respect.

8.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

9.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

10.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

11.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

12.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

13.      Deny.  Information that was withheld from page Truthout-392 is unlikely to have been compiled for a law enforcement purpose.

14.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

15.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

16.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

17.      Plaintiffs lack sufficient knowledge to form an opinion as to the accuracy of the Hardy Declaration in this respect.

18.      Deny.  FBI has not released all reasonably segregable information.

19.      Deny.

20.      Deny.  FBI has not released all reasonably segregable information.

2

Date:   April 3, 2013

Respectfully submitted,

 /s/ Kelly B. McClanahan_____
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*