UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TRUTHOUT, <u>et al.</u>,                )
                                        )
            Plaintiffs,                 )
                                        )
      v.                                )   Civil Action No. 12-1660 RMC
                                        )
DEPARTMENT OF JUSTICE,                  )
                                        )
            Defendant                   )
_____ )

REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

INTRODUCTION

Plaintiffs have not raised sufficient question regarding the material facts at issue successfully to challenge the grant of summary judgment or dismissal[1] for Defendant in this Freedom of Information Act case.

---

[1]   In light of Plaintiffs' claim that two pages from a FOIA response made to other FOIA requesters were also responsive to one of Plaintiffs' several requests, Defendant has reexamined the requests and the document and learned that a single 2-page document did fit within Plaintiffs' Freedom of Information Act/Privacy Act ("FOIPA") Request No. 1191931.  <u>See</u> Supplemental Declaration of David M. Hardy ("Supp. Hardy Decl."), ¶ 21.  The document is being produced with this reply.  <u>Id.</u>, ¶ 21 and Attachment A.  This renders that aspect of the litigation moot, as with the other documents that have been produced.  <u>See</u> <u>Crooker</u> v. <u>United States State Dept.</u>, 628 F.2d 9, 10 (D.C. Cir. 1980); <u>see</u> <u>also</u> Defendant's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, For Summary Judgment ("Defendant's Mem.") at 2-4.

ARGUMENT

Plaintiffs have argued that dismissal should not be based on a jurisdictional failing (Plaintiffs' Opp. at 1 fn.2), as if Defendant had argued that the Court had no role to decide the issues in this case.  But Defendant has always recognized that the Court has jurisdiction to decide the remaining issues in the case (including jurisdiction), but has provided proper support for the conclusion that release of documents in a FOIA case renders the issues as to those documents or portions of documents moot, a jurisdictional failing.  See Crooker v. United States State Dept., 628 F.2d 9, 10 (D.C. Cir. 1980); see also Boyd v. Criminal Div. of U.S. Dept. of Justice, 475 F.3d 381, 385 n.1 (D.C. Cir. 2007).

In responding to the Defendant's Statement of Material Facts, Plaintiffs have not satisfactorily cited to any record evidence to question the accuracy of the facts set forth by Defendant, as required by Local Rule 7(h)(1).  Thus, this Court would not abuse its discretion in employing Local Civ. R. 7(h) and this Court's analysis in Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150-54 (D.C. Cir. 1996) (allowing District Court to deem admitted facts set forth by a party in support of summary judgment that are not properly controverted by the opposing party); Gardels v. CIA, 637 F.2d 770, 773 (D.C. Cir. 1980); SEC v. Banner Fund Int'l, 211 F.3d

602, 616 (D.C. Cir. 2000) (If the party opposing the motion fails to comply with this local rule, then the district court is under no obligation to sift through the record and should instead deem as admitted the moving party's statement).[2]

Nevertheless, even assessing the many legal arguments raised by Plaintiffs as though they were factual in nature, the record establishes that Defendant is entitled to summary judgment as to the legal adequacy of its search for responsive documents, the propriety of any withholdings made, and the proper segregation by Defendant of information that can be released from a document that contains other information that is subject to an exemption under the FOIA.  See, e.g., Supp. Hardy Decl., ¶¶ 4-22.[3]

---

[2] A potential exception to this general rule is the requirement that the Court conduct an analysis of the segregability of documents in a FOIA case even if not challenged by the plaintiff.  See Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022 (D.C. Cir. 1998). Defendant submits that the facts set forth in the Declaration of David Hardy ("Hardy Decl.") adequately explain how the FBI has satisfied that obligation.  Def's SMF, ¶¶ 1, 18-20 (to which Plaintiffs' Response To Defendant's Statement Of Material Facts As To Which There Is No Genuine Dispute either agrees (see id.,¶ 1) or denies without citation to any contrary evidence (see id., ¶¶ 18-20)); Hardy Decl., ¶¶ 1, 68-69, 72, 128, 137-38 and Exhibit SS; Hardy Supp. Decl., ¶ 19.

[3] Plaintiffs have indicated that certain documents or portions of documents are no longer in dispute.  See, e.g., Plaintiffs' Opp. at 7 fn.6 ("Truthout has elected to not challenge the adequacy of FBI's search regarding Request No. 1182695-000."); Plaintiffs' Opp. at 9-10 (listing 7 categories of materials Plaintiffs are not challenging).

Plaintiffs do raise certain "brief factual issues" in their opposition, see Plaintiffs' Opp. at 2-3.  But they are not material to the outcome of the action.

Failure to Exhaust

Plaintiffs recognize their failure to exhaust by filing an administrative appeal of the response to their FOIA Request No. 1182695-000, the request that seeks "the FBI FOIA analyst processing notes related to ... FOIA request : 1176937-000." Hardy Decl., ¶¶ 44-47; Plaintiffs' Opp. at 2.  The Court would be within its discretion to deny the request for a failure to exhaust.  See Judicial Watch, Inc. v. FBI, 190 F.Supp.2d 29, 33 (D.D.C. 2002) (citing Oglesby v. U.S. Department of the Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990)).  The Court of Appeals, however, has made clear that such a dismissal would not be based on any jurisdictional prerequisite, but would, instead, be governed by a jurisprudential doctrine.  See Hildago v. FBI, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003).  Plaintiffs complain that the agency response to FOIA request No. 1182695-000 was never received by Jason Leopold.  Plaintiffs' Opp. at 2.  The FBI has double-checked and verified that the document was sent to the correct address, was mailed on April 24, 2012, and the agency has no record indicating that the letter was returned to the FBI.  Hardy Supp. Decl., ¶ 20.  Thus, the Court could, in its

discretion, decline to address the issue.  See Oglesby, supra;

Hidalgo, supra.

Of course, Plaintiffs could have someone else submit

another FOIA request for the same document and bring another

action.  Thus, Defendant provides further information supporting

the assertion of the deliberative process privilege and

Exemption (b)(5) to the one-page document.[4]  See Hardy Supp.

Decl., ¶¶ 14-16; see also, infra (discussing Exemption (b)(5)).

### The Pages Released To Others

Plaintiffs have complained that two pages of documents were

located for other FOIA requesters, but not accounted for by the

FBI in one of their several requests at issue in this action.

Plaintiffs' Opp. at 2-3.  In light of Plaintiffs' concern,

Defendant has reexamined the requests and the relevant documents

and learned that a single 2-page document did fit within

Plaintiffs' Freedom of Information Act/Privacy Act ("FOIPA")

Request No. 1191931.  See Supplemental Declaration of David M.

Hardy ("Supp. Hardy Decl."), ¶ 21.  The document is being

produced with this reply.  Id., ¶ 21 and Attachment A.  This

renders that aspect of the litigation moot, as with the other

documents that have been produced.  See Crooker v. United States

State Dept., 628 F.2d 9, 10 (D.C. Cir. 1980); see also

---

[4] See Exhibit SS page 197 of 197.

defendant's Memorandum Of Points And Authorities In Support Of
Motion To Dismiss Or, In The Alternative, For Summary Judgment
("Defendant's Mem.") at 2-4.  And, as reflected below, this
inadvertent slip does not call into question the adequacy of the
search or the good faith exhibited by the FBI in responding to
Plaintiffs' requests.[5]

        Adequacy of the Searches

        Plaintiffs complain that the FBI has failed adequately to
search for responsive materials, but where they proffer some
purported basis to question the completeness of the search,
their concerns are meritless.  The FBI utilized the agency's
Central Records System ("CRS") to locate responsive materials.
Plaintiffs suggest that records could be in other databases.
Plaintiffs' Opp. at 4-9.[6]  In fact, the Plaintiffs'
misunderstandings as to the purported nature of the databases
has been explained, as requested by Plaintiffs.[7]  Hardy Supp.
Decl., ¶¶ 5-11.  Such a showing is sufficient to satisfy the
search requirements of the FOIA.  See Hardy Decl., ¶¶ 59-66;

_____

        [5] Defendant notes that several of Plaintiffs' requests had
specific (even changing) time limitations.  See Hardy Decl., ¶¶
7, 13, 25, 33, 48.

        [6] Plaintiffs, however, concede the adequacy of the search
for documents responsive to Request No. 1182695-000.  See
Plaintiffs' Opp. at 7 fn.6.

        [7] See Plaintiffs' Opp. at 7 ("FBI should be compelled to
explain why the systems it did not search are unlikely to
produce responsive records.")

Hardy Supp. Decl., 5-11 and fn.1 (explaining that the Automated Case Support System ("ACS") is comprised of three integrated applications and would identify any responsive main files as well as cross-references; that, given the broad search of the comprehensive CRS system, there is no reasonable basis to conclude that unspecified e-mail systems would contain responsive information warranting the added burden of a further search; and that informal "tickler" files with responsive materials were not likely to exist, given that such files are a thing of the past within the FBI).

Similarly, Plaintiffs offer mere speculation that the FBI must have conducted an investigation into an Occupy Wall Street matter because an FBI employee reportedly made a statement that the FBI was <u>not</u> engaged with local police in addressing Occupy Wall Street protestors. Plaintiffs' Opp. at 8. First, an unsworn report in a blog is hardly sufficient basis to challenge the FBI's properly-supported factual submissions. But more obviously, the report supports the notion that few responsive documents can be expected in the FBI's files. <u>Id.</u>; <u>see</u> Hardy Supp. Decl., ¶ 11. Likewise, Plaintiffs makes a weak effort to suggest that an investigation was underway by the FBI in New York, because Occupy Wall Street protestors were reportedly near "26 Federal Plaza" [and an FBI Field Office]. Plaintiffs' Opp. at 8. They proffer no facts to suggest that any investigation

was underway but excluded from the Central Record System.   See
Hardy Supp. Decl., ¶ 11.   Rather, the purported Department of
Homeland Security e-mail cited by Plaintiffs appear more likely
to describe an off-hand comment that someone would have observed
simply walking the streets of Lower Manhattan.   See id.;
Plaintiffs' Opp. at 8; Pl. Ex. H.

        In short, the searches conducted here were appropriate.
See Ogelsby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir.
1990) (in responding to a FOIA request an agency is under a duty
to conduct no more than a reasonable search for responsive
records); Cleary, Gottlieb, Steen & Hamilton v. Department of
Health and Human Services, 844 F.Supp. 770, 776 (D.D.C. 1993).[8]

        Withholdings

        Plaintiffs challenge certain withholdings,[9] but, with one
exception,[10] does so without any legitimate basis.

---

        [8] The searches conducted here differ from those found
insufficient in Campbell v. U.S. Dept. of Justice, 164 F.3d 20
(D.C. Cir. 1998), because the FBI has explained why materials in
the ELSUR system would likely have been identified in the
searches employed, see Hardy Supp. Decl., ¶¶ 8-10 and fn.1) and
why materials were unlikely to be located now in any "tickler"
files.   Id., ¶¶ 6-10; see also Hardy Decl., ¶¶ 59-66.

        [9] Plaintiffs do not contest certain withholdings.   See
e.g., Plaintiffs' Opp. at 5 fn.2; id. at 9 fn.4.

        [10] Plaintiffs have noted one mistake in coding the FBI's
submission.   Plaintiffs' Opp. at 11.   Where one document relied
upon 5 U.S.C. § 552(b)(3) and Crim. Rule 6(e) (coded "(b)(3)-
1"), it should have been coded "(b)(3)-2" as were the other

Exemption (b)(3)

Plaintiffs seek to gather some information that the FBI has withheld under 5 U.S.C. § 552(b)(3) and Criminal Rule 6(e) (the Grand Jury Secrecy rule), claiming that some part of the material should be disclosed.  Plaintiffs' Opp. at 11.  The FBI has adequately documented that "only that information which explicitly discloses matters occurring before a federal Grand Jury has been withheld pursuant to Exemption (b)(3)-1."  Hardy Supp. Decl., ¶ 13; Hardy Decl., ¶¶ 98-99.  The FBI submits that this adequately addresses the issue.

Exemption (b)(5)

As noted above, the FBI asserted 5 U.S.C. § 552(b)(5) and the deliberative process privilege to withhold a single page consisting of a FOIA Analyst's notes.  Hardy Decl., ¶¶ 105-09. Defendant provides further information supporting the assertion of the deliberative process privilege and Exemption (b)(5) to the one-page document.[11]  See Hardy Supp. Decl., ¶¶ 14-16; see

---

(b)(3) codings on the page.  See Exhibit SS (ECF No. 10-45) page 54 of 197 ("Truthout-107").  See Hardy Supp. Decl., ¶ 13.  The document remains properly redacted under the same statutory Exemption (5 U.S.C. § 552(b)(3)) but in concert with the Bank Secrecy Act, 31 U.S.C. § 5319.  Id.; Hardy Decl., ¶¶ 97, 100-103.  Plaintiffs have indicated they are not challenging the assertion of Exemption (b)(3) based on the Bank Secrecy Act. Plaintiffs' Opp. at 9-10.

[11] See Exhibit SS (ECF No. 10-45) page 197 of 197.

also, infra (discussing Exemption (b)(5)).  Plaintiffs' request

for the FOIA Analyst's processing notes (Exhibit GG) came with a

request that the agency exercise its discretion to disclose them

even if they are deemed properly subject to withholding.  See

Exhibit GG ("If you regard these documents as potentially exempt

from disclosure requirements, I request that you nonetheless

exercise your discretion to disclose them.")[12]  The FBI, however,

has concluded that release of any information from the document

could provide information that could be used to piece together

details of what is contained in law enforcement records.[13]

---

[12] Such a discretionary disclosure may explain why Plaintiffs
have been able to produce a document that it deems similar to
the withheld FOIA analyst's processing notes.  See Plaintiffs'
Opp. at 12 (ECF No. 13) and Pl. Ex. I (ECF No. 13-9).

[13] See Hardy Supp. Decl., ¶¶ 14-16, 18(a) (The FBI asserted
Exemption (b)(7)(E) to protect analyst notes regarding a FOIA
case that involves investigative law enforcement records, as
they relate to the FBI's mission to support state and local law
enforcement partners.  These records were compiled for law
enforcement purposes and readily meets the threshold requirement
of Exemption (b)(7).  Applying a mosaic analysis, the release of
analyst notes in some FOIA cases and not others could allow
requesters to piece together certain pieces of information that
would otherwise be protected by exemptions within the actual law
enforcement records.  This in turn, could reveal a certain
investigative technique or procedure that the FBI is trying to
protect.  See Berman v. CIA, 501 F.3d 1136, 1143 (9th Cir. 2007)
("But nothing prevents the CIA from relying on the common sense
premise that the impact of disclosing protected documents must
be evaluated not only based upon the information appearing
within the four corners of the document, but also with regard to
what secrets the document could divulge when viewed in light of
other information available to interested observers.")
(discussing the mosaic theory in the context of FOIA Exemption
(b)(3)); Morley v. CIA, 699 F.Supp.2d 244, 254 (D.D.C. 2010)

Exemptions (b)(6),(b)(7)(C) and (b)(7)(D)

Plaintiffs suggest that because certain individuals have provided privacy waivers after the FBI responded to the FOIA requests at issue, that the withholdings premised on 5 U.S.C. § 552(b)(6), (b)(7)(C) and (B)(7)(C) should be rejected. The FBI could have rightly objected to the belated submissions of waivers, but instead agreed to go back over the documents gathered in the searches and see if additional materials could be released. See Hardy Supp. Decl., ¶ 17. The FBI reviewed the previously processed pages for third party names and information associated with the nine waivers, but did not locate any additional material that can be released, because those names do not appear in the material that was processed as part of Plaintiffs' FOIA requests. Id.

Exemption (b)(7)(E)

Plaintiffs also complain about the application of 5 U.S.C. § 552(b)(7)(E). Plaintiffs' Opp. at 12-14. The FBI submits that, notwithstanding Plaintiffs' complaints, the record adequately supports application of the exemption. See Hardy Decl., ¶¶ 131-37; Hardy Supp. Decl., ¶ 18. In some cases, it is not possible to describe secret law enforcement techniques, even in general terms, without disclosing the very information to be

(discussing the mosaic theory in the context of FOIA Exemption (b)(2)).

withheld. Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F.Supp. 496, 507 (D.D.C. 1997) (citing National Security Archive v. Federal Bureau of Investigation, 759 F.Supp. 872, 885 (D.D.C. 1991).   Still, the FBI has provided details sufficient to allow the Court to assess the application of the exemption, as it must.   See Founding Church of Scientology v. National Security Agency, 610 F.2d 824, 831–32 & n.67 (D.C. Cir. 1979) (requiring affidavit to be sufficiently detailed to enable a determination on whether exemption was properly applied); Hardy Supp. Decl., ¶ 18 (explaining how the effectiveness of law enforcement techniques could suffer if the materials at issue were disclosed, including: a) information contained in FOIA processing notes, b) an internal non-public telephone number used daily by law enforcement to exchange investigatory records, c) database information and search results, d) Web Site Address information about an internal web addresses used to exchange information in law enforcement investigations, e) Collection and/or Analysis of Information describing numerous methods that the FBI uses to collect and analyze the information that it obtains for investigative purposes, f) other specific law enforcement techniques used to conduct national security investigations, and g) Intelligence Analyst Analytical Technique and Procedures used by the Central Florida Intelligence Exchange ("CFIX") to conduct national security investigations).

Segregability

Plaintiffs complain that the FBI has not sufficiently documented why the FBI cannot segregate materials from pages that have been withheld in full. Plaintiffs' Opp. at 14-15. Defendant believes that a review of the redacted materials provided to Plaintiffs (see Exhibit SS) coupled with the facts proffered by the FBI suffice to satisfy its burden to establish that the FBI has released portions of the documents where it could without doing damage to the need to keep properly withheld information from being made public. See Hardy Decl., ¶¶ 67 (noting the use of redactions), 68 ("the FBI sought to achieve maximum disclosure. . . [and made] [e]very effort to provide plaintiffs will all material in the public domain and will all reasonably segregable portions of releasable material. No reasonably segregable, nonexempt portions were withheld from plaintiffs", 69 (noting that a review of the materials will demonstrate that "all material withheld is exempt from disclosure ... or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material"), 72 (noting that material was not withheld unless specifically exempt or "otherwise so intertwined with protected material that segregation is not possible without

revealing the very underlying material the FBI is trying to protect.")[14]

<u>The Possibility of Exclusions</u>

Plaintiffs also assert that Defendant may have relied upon an exclusion in the FOIA, seeking to have the FBI "clarify whether or not it has excluded any records under 5 U.S.C. § 552(c)." Plaintiffs' Opp. at 15.  Section 552(c) provides that agencies may treat certain law enforcement and national security records "as not subject to the requirements" of FOIA. 5 U.S.C. § 552(c).  Congress added this section to the FOIA in 1986 to create a mechanism for protecting especially sensitive law enforcement materials, including documents concerning (1) ongoing criminal investigations, (2) informant identities, and (3) classified foreign intelligence or international terrorism information. *Id.* §§ 552(c)(1), (c)(2) and (c)(3).  Section 552(c) differs from 552(b), as Section 552(c) allows the government to "exclude" certain highly sensitive information from the scope of the FOIA, not simply "exempt" information from production.  <u>Steinberg</u> v. <u>U.S. Dep't of Justice</u>, No. 93-2409, 1997 WL 349997, at *1 (D.D.C. June 18, 1997).  "An 'exclusion' is different from an exemption in that the Government need not

---

[14]  Should the Court be dissatisfied with the current record regarding segregability, Defendant asks that the Court accept for in camera review the unredacted materials, and conduct an independent analysis of the materials.

even acknowledge the existence of excluded information.  Rather, the Government is permitted to file an *in camera* declaration, which explains either that no exclusion was invoked or that the exclusion was invoked appropriately." Id.

Because "it is essential to the viability of the exclusion mechanism that requesters not be able to deduce whether an exclusion was employed at all in a given case," it is "the government's standard litigation policy . . . that wherever a FOIA plaintiff raises a distinct claim regarding the suspected use of an exclusion, the government routinely will submit an *in camera* declaration addressing that claim, one way or the other." Attorney General's Memorandum on the 1986 Amendments to the Freedom of Information Act, § G ("Attorney General Memo") (available at http://www.justice.gov/oip/86agmemo.htm#additional ("it shall be the government's standard litigation policy in the defense of FOIA lawsuits that wherever a FOIA plaintiff raises a distinct claim regarding the suspected use of an exclusion, the government routinely will submit an *in camera* declaration addressing that claim, one way or the other.").  Plaintiffs' suggestion that § 552(c)(2) is at issue in this case is thus

addressed in defendant's *in camera*, *ex parte* declaration, which

defendant intends to file on or before May 7, 2013.[15]

### The FBI Did Not Act Arbitrarily or Capriciously

Plaintiffs complain that the FBI wrongly delayed its

disclosure of the materials responsive to its numerous FOIA

requests.  Plaintiffs' Opp. at 15-18.  In fact, any delay was

the result of the FBI attempting to be thorough and accurate in

providing responsive materials to Plaintiffs' many requests.

Just because other requesters may have received materials

faster, does not mean that some nefarious or arbitrary effort

was afoot.  See Hardy Supp. Decl., ¶ 22.  Instead, the delay was

---

[15] Just as it is vital to the integrity of the exclusion
provisions that the government file an *in camera* declaration any
time a plaintiff raises a distinct claim under § 552(c),
regardless of whether the government actually relied on §
552(c), it is paramount that a court, after reviewing the
government's *in camera*, *ex parte* submissions, not indicate in
any manner whether there is or is not an exclusion in play.
Attorney General Memo., § G(5).  If a court is satisfied with
the government's submission, a public decision may not confirm
or deny that an exclusion was actually invoked, but may state
only that "a full review of the claim was undertaken and that,
if an exclusion in fact was employed, it was, and continues to
remain, amply justified." Id.; see, e.g., American Civil
Liberties Union of Michigan v. FBI, 2012 WL 4513626, *12-*13
(E.D. Mich. Sept. 30, 2012) ("Defendants filed an in camera, ex
parte declaration addressing Plaintiffs' § 552(c) claim, thereby
allowing the Court to determine whether any exclusion was
properly used.  The Court has fully reviewed Defendants' in
camera declaration and Plaintiffs' § 552(c) exclusion claim.
While neither confirming nor denying the existence of any
exclusion, the Court 'finds and concludes that if an exclusion
was ... employed[,] it was and remains amply justified.'"
(citing Beauman v. FBI, No. 92-7603 (C.D. Cal. Apr. 28, 1993)
and Steinberg v. U.S. Department of Justice, Civil Action No.
93-2409-LFO, 1997 WL 349997 at *1 (D.D.C. June 18, 1997).

likely due to the facts that each of the other requesters had only a single FOIA request for the FBI to process.  Id. Plaintiffs had some 5 requests.  Id.  And Plaintiffs' requests often had specific criteria, such as date parameters or limitation as to the type on information sought, such that the FBI was required to sift through materials to remove non-responsive materials.  Id.  In short, where, as here, the FBI has agreed to research materials after Plaintiffs belatedly provided privacy waivers (rather than requiring new FOIA requests), see Hardy Supp. Decl., ¶ 17, and where the agency has even gone beyond the typical search efforts  (id., ¶ 7; Hardy Decl., ¶ 66), Plaintiffs cannot make out a factual basis for a finding of wrongful delay.  Thus, no effort should be expended to refer anything to the Office of Special Counsel or any other authority.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, in the declarations submitted in support of summary judgment,[16] and as proffered in Defendant's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, For Summary

---

[16] Where Plaintiffs have raised issues in an effort to defeat summary judgment, the FBI has sought to address them in the accompanying supplemental declaration and, accordingly, as not waived or admitted.  Defendant asks that the Court consider these additional facts even if they were not deemed of adequate import to warrant separate reference herein.

Judgment, the above civil action should be dismissed, or summary

judgment entered in favor of the defendant.

                                Respectfully submitted,

                                RONALD C. MACHEN JR., DC Bar #447889
                                United States Attorney
                                for the District of Columbia


                                DANIEL F. VAN HORN, DC Bar #924092
                                Chief, Civil Division


                    By: _____ /s/
                        W. MARK NEBEKER, DC Bar #396739
                        Assistant United States Attorney
                        555 4th Street, N.W.
                        Washington, DC  20530
                        (202) 514-7230
                        mark.nebeker@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing Reply To Plaintiffs' Opposition To Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment and declaration has been made through the Court's electronic transmission facilities on the 1st day of May, 2013.

_____/s/

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, DC  20530
(202) 514-7230
