## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**TRUTHOUT and**                        )
**JEFFREY LIGHT,**                      )
                                        )
     **Plaintiffs,**       )
                                        )
     **v.**               )     **Civil Action No. 12-1660 (RMC)**
                                        )
**DEPARTMENT OF JUSTICE,**              )
                                        )
     **Defendant.**        )
_____       )

## OPINION

Plaintiffs Truthout and Jeffrey Light are suing the Federal Bureau of Investigation (FBI) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to compel the release of records concerning the protest movement and encampment known as "Occupy Wall Street."  The FBI has moved to dismiss or for summary judgment.[1]  The motion will be granted.

## I.  FACTS

Plaintiffs sent to the FBI six FOIA requests for records on the Occupy Wall Street and other Occupy encampments across the country.  They challenge the Government's response to five: Request Nos. 1176349-000, 1176937-000 (reopened as 1176937-001), 1177831-000, 1178216-000, and 1191931-000.[2]

_____

[1] The FBI is a component of the Department of Justice (DOJ).  While DOJ is the proper Defendant here, the only records at issue here are FBI records.  For ease of reference, this Opinion refers to the FBI as the Defendant.

[2] Plaintiffs waived any claim regarding Request No. 1182695-000.  *See* Opp'n [Dkt. 13] at 7 n.6.  In addition, Plaintiffs requested seven categories of materials that were withheld that are not contested.  *Id*. at 9-10.

### 1. Request No. 1176349-000

On October 31, 2011, Plaintiffs sent an email to FBI Headquarters (FBIHQ) seeking the following materials related to the protest movement known as 'Occupy Wall Street'" from August 1, 2011 to October 31, 2011: "all emails, memos, letter[s], audio/video, transcript[s], reports, Threat Assessments, between FBI personnel, including field agents and officers, and law enforcement agencies, including but not limited to, local police personnel, CIA and Department of Homeland." *See* Mot. to Dismiss or for Sum. J. (MSJ) [Dkt. 9], Ex. A (Hardy Decl.) [Dkt. 9-1] ¶ 7; Notice of Exs. to Hardy Decl. [Dkt. 10], Ex. A [Dkt. 10-1] (Oct. 31, 2011 Request). The FBI designated this Request No. 1176349-000 and responded on November 15, 2011, indicating that it had searched its Central Records System (CRS, described below in Part III. B.) and found no responsive records. Plaintiffs appealed to DOJ's Office of Information and Privacy (OIP), and OIP affirmed. *See* Hardy Decl. ¶¶ 7-11. Despite its initial response, on January 10, 2013, the FBI released 37 pages in response to Request No. 1176349-000.[3] The FBI stated that it had located and reviewed 162 pages of records and had withheld certain records under FOIA Exemptions (b)(1), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).[4] Hardy Decl. ¶ 12.

### 2. Request Nos. 1176937-000 and 1176937-001

On October 31, 2011, Plaintiffs submitted their second FOIA request to FBIHQ, Request No. 1176937-000. This time Plaintiffs sought "all documents, including emails, notes, memoranda, from the department pertaining to threat assessments of the protest movement organization known as Occupy Wall Street from August 1, 2011 to October 18, 2011." Hardy

---

[3] On January 10, 2013, the FBI responded to Request Nos. 1176349-000, 1176937-001, 1177831-000, 1178216-000, 1191931-000. *See* Ex. F [Dkt. 10-7] (Jan. 10, 2013 Letter).

[4] These exemptions are referred to as Exemptions 1, 3, 6, 7A, 7C, 7D, and 7E.

Decl. ¶ 13, Ex. G [Dkt. 10-7] (October 31, 2011 Request).  As with the first Request, the FBI

sent a letter to Plaintiffs dated November 15, 2011, indicating that it had searched CRS and

found no responsive records.  Hardy Decl. ¶ 14.  The FBI later re-opened Request No. 1176937-

000, labeling the reopened matter as Request No. 1176937-001.  *Id.* ¶ 15.  On January 10, 2013,

the FBI released 24 pages of records in response to Request No. 1176937-001.  The FBI had

reviewed 105 pages, but withheld certain records under the same FOIA Exemptions that were

invoked with respect to Plaintiffs' first FOIA request, Exemptions 1, 3, 6, 7A, 7C, 7D, and 7E.

*Id.* ¶ 24.

### 3.  Request No. 1177831-000

Plaintiffs submitted their third FOIA request to the FBIHQ on November 16,

2011, No. 1177831-000, asking for "records relating to the Occupy DC and Occupy Wall Street

protests in McPherson Square [in Washington, D.C] and Zucotti Park [in New York City],

respectively."  *Id.* ¶ 25, Ex. R [Dkt. 10-18] (Nov. 16, 2011 Request).  On January 10, 2013, the

FBI responded, releasing 80 pages, after reviewing 288 pages of records, and withholding

information under Exemptions 1, 3, 6, 7A, 7C, 7D, and 7E.  Hardy Decl. ¶ 32.

### 4.  Request No. 1178216-000

On November 18, 2011, Plaintiffs sent a fourth FOIA request to the FBI.  This

time, they sought to amend their first request, Request No. 1176349-000, to cover documents

regarding *all* Occupy Wall Street and Occupy Encampments across the country for the period

November 1 through 18, 2011.  Hardy Decl. ¶ 33, Ex. X [Dkt. 10-24] (Nov. 18, 2011 Request).

On January 10, 2013, after reviewing 125 pages of records, the FBI released 37 pages in

response to the fourth request.  The FBI withheld the balance of the pages exempt under the

same FOIA Exemptions.  *Id.* ¶ 43.

### 5. Request No. 1191931-000

Finally, on June 4, 2012, Plaintiffs submitted the fifth request that is the subject of this litigation.  This fifth request, Request No. 1191931-000, sought "all emails, memos, letters, audio/video, transcripts, reports, including FBI Threat Assessments, written between November 1, 2011 to the present related to the protest movement known as 'Occupy Wall Street.'"  Hardy Decl. ¶ 48, Ex. JJ [Dkt. 10-36] (June 4, 2011 Request).  On January 10, 2013, after reviewing 245 pages of records, the FBI released 61 pages of records in response to the fifth request and withheld records under the same FOIA Exemptions listed above.  Hardy Decl. ¶ 58.  Plaintiffs claimed that an additional two-page record had been released to other FOIA requesters and that this record also was responsive to the fifth request.  The FBI then reexamined the fifth request and the record and released it to Plaintiffs.  *See* Reply [Dkt. 20] at 1 n.1.

## II.  LEGAL STANDARD

### A.  Motion to Dismiss

The FBI asserts two bases for dismissing this suit.  First, the FBI contends that because it conducted an adequate search and released all non-exempt records, this case is moot.  Second, the FBI claims that Plaintiffs have failed to state a claim under FOIA.

### 1.  Lack of Jurisdiction Due to Mootness

The FBI also asserts that the Court lacks jurisdiction because Plaintiffs' claims are moot, i.e., the FBI conducted an adequate search and released all non-exempt records.  A motion to dismiss for mootness is properly brought under Federal Rule of Civil Procedure 12(b)(1).  *Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 27 (D.D.C. 2006).  That rule imposes on a court "an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority."  *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 5 (D.D.C. 2004).  Under the

Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "Even where the litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (citations omitted).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When reviewing such a motion, a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).

### 2. Failure to State a Claim

The FBI contends that Plaintiffs failed to state a claim under FOIA because it has searched for records and released all that are not covered by an Exemption. A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation and citation omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.* at 570. Although a court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.* at 555, it need not accept as true legal conclusions set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### B. Motion for Summary Judgment

Further, the FBI contends that it is entitled to summary judgment because there is no genuine dispute as to any material fact and the FBI is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, a court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, a court may award summary judgment

6

solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C. Cir. 1973) (requiring agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt" from FOIA's requirements.  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal quotation and citation omitted).

## III.  ANALYSIS

### A.  FOIA Generally

FOIA requires federal agencies to release government records to the public upon request, subject to nine listed exceptions.  *See* 5 U.S.C. § 552(b); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records.  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004).  FOIA authorizes suit only against federal agencies and the only remedy it provides for the improper withholding of records is injunctive relief.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980); *see also* 5 U.S.C. § 552(a)(4)(B) & (f)(1).  Pursuant to the remedial powers of FOIA, a district court may only order the production of agency records, nothing more.  *See, e.g., Kennecott Utah Copper Corp. v. U.S. Dep't of the Interior*, 88 F.3d

1191, 1203 (D.C. Cir. 1996) (finding FOIA only calls for releasing records to a complainant, not

publishing the records in the Federal Register).  Once the requested records have been produced,

there is no longer a case or controversy and the FOIA action becomes moot.  *See Armstrong v.*

*Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).

   The defendant in a FOIA case must show that its search for responsive records

was adequate, that any exemptions claimed actually apply, and that any reasonably segregable

non-exempt parts of records have been disclosed after redaction of exempt information.  *See*

*Sanders v. Obama*, 729 F. Supp. 2d 148, 154 (D.D.C. 2010).  The adequacy of a search is

measured by a standard of reasonableness and depends on the individual circumstances of each

case.  *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not

whether other responsive records may exist, but whether the search itself was adequate.

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).

   Thus, to rebut a challenge to the adequacy of a search, the agency need only show

that "the search was reasonably calculated to discover the requested documents, not whether it

actually uncovered every document extant." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201

(D.C. Cir. 1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 950-51 (D.C. Cir. 1986)).  There is no

requirement that an agency search every record system, but the agency must conduct a good

faith, reasonable search of those systems of records likely to possess the requested records.

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

   An agency may prove the reasonableness of its search by a declaration by

responsible agency officials, so long as the declaration is reasonably detailed and not

controverted by contrary evidence or evidence of bad faith.  *Military Audit Project*, 656 F.2d at

738.  An agency affidavit can demonstrate reasonableness by "setting forth the search terms and

the type of search performed, and averring that all files likely to contain responsive materials (if

such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326

(D.C. Cir. 1999).  An agency's declarations are accorded "a presumption of good faith, which

cannot be rebutted by purely speculative claims about the existence and discoverability of other

documents." *SafeCard*, 926 F.2d at 1200 (internal citation and quotation omitted); *see also id.* at

1201 ("Mere speculation that as yet uncovered documents may exist does not undermine the

finding that the agency conducted a reasonable search for them.").  An affiant who is in charge

of coordinating an agency's document search efforts in response to a plaintiff's FOIA request is

the most appropriate person to provide a comprehensive affidavit in FOIA litigation.  *Id.* at 1201.

Declarations that contain hearsay in recounting searches for documents are generally acceptable.

*Kay v. FCC*, 976 F. Supp. 23, 34 n.29 (D.D.C. 1997),  *aff'd*, 172 F.3d 919 (D.C. Cir. 1998)

(Table).

   Once an agency has provided adequate affidavits, the burden shifts back to the

plaintiff to demonstrate a lack of a good faith search.  *See Maynard v. CIA*, 986 F.2d 547, 560

(1st Cir. 1993).  If a review of the record raises substantial doubt as to the reasonableness of the

search, especially in light of "well-defined requests and positive indications of overlooked

materials," then summary judgment may be inappropriate.  *Founding Church of Scientology v.

Nat'l Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979).

   FOIA "was not intended to reduce government agencies to full-time investigators

on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 27

(D.D.C. 2000) (internal quotation omitted).  As such, agencies are not required to "organize

documents to facilitate FOIA responses." *Goulding v. IRS*, Civ. No. 97-C-5628, 1998 WL

325202, at *5 (N.D. Ill. June 8, 1998) (citing *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. at 161–

62); *see also Blakey v. Dep't of Justice*, 549 F. Supp. 362, 366-67 (D.D.C. 1982) ("FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983) (Table).  In addition, FOIA does not require agencies to create or retain documents. *Moore v. Bush*, 601 F. Supp. 2d 6, 15 (D.D.C. 2009).  Further, an agency is not required to undertake a search that is so broad as to be unduly burdensome.  *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 891 (D.C. Cir. 1995).  "[I]t is the requester's responsibility to frame requests with sufficient particularity . . . ."  *Judicial Watch,* 108 F. Supp. 2d at 27 (internal quotation omitted).  An agency's search must be evaluated in light of the request made.  The agency is "not obliged to look beyond the four corners of the request for leads to the location of responsive documents."  *Kowalczyk v. Dep't of Justice,* 73 F.3d 386, 389 (D.C. Cir. 1996).

## B.  Scope of Search

The Hardy Declaration makes clear that the FBI conducted good faith, reasonable searches of the systems of records likely to possess records responsive to Plaintiffs' requests.  In each instance, the FBI searched CRS, the FBI's electronic repository for information compiled for law enforcement purposes as well as administrative, applicant, criminal, personnel, and other files.  Hardy Decl. ¶ 59.  CRS is accessed via an Automated Case Support System (ACS) and General Indices by searching for the subject.  *Id*. ¶ 59-61.  ACS consists of Investigative Case Management, Electronic Case File (ECF), and a Universal Index.  *Id*. ¶ 63.  In response to Plaintiffs' five disputed FOIA requests, the FBI searched the terms:  Occupy Movement/Northern California, Occupy Oakland, Occupy San Francisco, Occupy Cal, Occupy UC Davis, OWS, Occupy Wall, Occupy Movement, Occupy Encampment(s), Occupy McPherson, Occupy Zuccotti Park, Occupy New York City, Occupy DC, Occupy Portland,

Occupy Sacramento, Occupy Salt Lake City, Occupy Seattle, Occupy Atlanta, Occupy San Jose,

Occupy Boston, Occupy Los Angeles, Occupy Indianapolis, Occupy Baltimore, Occupy St.

Louis, Occupy Cincinnati, Occupy Providence, Occupy Austin, Occupy Denver, Occupy

Eugene, Occupy Philadelphia, Occupy Buffalo, Occupy Las Vegas, Occupy Charlotte, Occupy

Pittsburgh, Occupy Dallas, Occupy Houston, Occupy Chicago, Occupy Washington, Occupy

Washington DC, and Occupy K.  The FBI did not find any documents as a result of these

searches.  Because the Occupy Movement has been widely publicized, the FBI also conducted

text searches of ECF.  *Id.* ¶ 65-66.  Because decisions regarding how to index names within a

document can vary, the text search was more comprehensive.  *Id.* ¶ 66 n.5.  As described above,

some responsive records were located and released to Plaintiffs on January 10, 2013.

   Plaintiffs protest that the FBI only searched CRS and that it did not search its

Electronic Surveillance (ELSUR) or Physical Surveillance (FISUR) record systems, the FBI's

email system, or shared drives used by FBIHQ and field offices.  The FBI, however,  searched

CRS because records responsive to Plaintiffs' requests would normally be found in this

comprehensive system.  Reply, Ex. 1 (Supp. Hardy Decl.) [Dkt. 20-1] ¶¶ 5-6, 10.  Also, a search

of CRS includes records at both FBIHQ and field offices, would have identified main files and

cross references, and would have identified files in ELSUR, FISUR, and in shared drives.  *Id.*

¶¶ 6, 9.  Given the broad search of CRS and ECF conducted by the FBI, Mr. Hardy determined

that there was no reasonable basis to search any unspecified email system, and such a search

would be unduly burdensome.  *Id.*; *see Nation Magazine,* 71 F.3d at 891.

   Although Plaintiffs did not request a search for any particular field office

"tickler," they argue that the FBI should have searched for such ticklers.  Ticklers are duplicate

files that were created in the past; they contained copies of documents and hand written notations

and were usually kept by a supervisor.  Supp. Hardy Decl. ¶ 10 n.1.  Today, the FBI is not

required to create or maintain tickler files.  *Id*. ¶ 10.  Moreover, records responsive to the

requests made in this case are normally indexed in CRS.  *Id*. ¶ 8.

The FBI has shown that it conducted searches reasonably calculated to discover

the requested documents.  *SafeCard*, 926 F.2d at 1201; *Meeropol*, 790 F.2d at 950-51.  The FBI

was not required to search every record system; it was only required to conduct a reasonable

search of those systems of records *likely* to possess the requested information.  *Oglesby*, 920 F.2d

at 68.  The FBI's search of CRS satisfied this standard.

Plaintiffs also complain that the FBI released a two-page document to the

American Civil Liberties Union of Northern California (ACLU-NC) in response to a similar

FOIA request but did not release the document in response to Plaintiffs' FOIA requests. The FBI

reexamined Plaintiffs' requests after they complained and determined that it had erroneously

determined that the two pages in question were outside the date range requested.  Supp. Hardy

Decl. ¶ 21.  Upon realizing its error, the FBI released the document to Plaintiffs.  *Id*.  This issue

is now moot.

Further, Plaintiffs insist that there must be documents related to an OWS

demonstration in New York City.  They point to an email from the Department of Homeland

Security that included the statement:  "The FBI's New York Field Office's Duty Agent reported

to me this evening that the OWS crowd wants to stage at 26 Federal Plaza and that signs are

being put up around Lower Manhattan calling for the demo."  Opp'n at 8.  Because 26 Federal

Plaza includes the FBI New York Field Office and because the FBI Duty Agent made this report,

Plaintiffs believe that the FBI has responsive records that it failed to release.  Plaintiffs'

speculation that additional documents exist does not affect the analysis of the reasonableness of

the FBI searches.  Mr. Hardy's Declarations are presumed to be in good faith, and they are not

rebutted by speculative claims that other responsive records exist.  *SafeCard*, 926 F.2d at 1200.

   Finally, because some of the records were distributed to other FBI offices and

systems, Plaintiffs contend that the FBI was required to search those offices and systems as well.

For example, one record was distributed to:  Deputy Assistant Director, Directorate of

Intelligence; Deputy Assistant Director, Criminal Investigative Division; Deputy Assistant

Director, Cyber Division; Editorial Review Unit, Directorate of Intelligence; FBI Intranet; Law

Enforcement Online; Virginia Fusion Center; and Infragard.  Opp'n at 9.  However, the FBI

searched its comprehensive record system, CRS, because that is the place where responsive

records were most likely to be kept.  Supp. Hardy Decl. ¶¶ 5-6, 10-11.  A search of CRS would

have located records at the offices listed on the distribution lists.  *Id.* ¶ 11.  Accordingly, the

FBI's search for records in response to Plaintiffs' requests was adequate under FOIA.

### C.  Exemptions

   Following a reasonable search, an agency may lawfully withhold records that are

exempt from release under FOIA.  Although FOIA "strongly favors prompt disclosure, its nine

enumerated exemptions are designed to protect those legitimate governmental and private

interests that might be harmed by release of certain types of information."  *August v. FBI*, 328

F.3d 697, 699 (D.C. Cir. 2003) (internal quotation omitted).  It is clear that "disclosure, not

secrecy, is the dominant objective of the Act."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361

(1976).  The exemptions are narrowly construed.  *Tax Analysts*, 492 U.S. at 151.

### 1.  Exemption 3

   The FBI withheld certain records under FOIA Exemption 3, 5 U.S.C. § 552(b)(3),

which exempts from disclosure matters occurring before a grand jury and records subpoenaed by

a grand jury.  Plaintiffs assert that Exemption 3 does not exempt the administrative portion of a subpoena, such as where and when the subpoena was issued, and that the FBI should be required to segregate this information and release it.  The FBI has been very clear that it withheld "only that information which explicitly discloses matters occurring before a Federal Grand Jury." Hardy Decl. ¶ 98.[5]  Plaintiffs' challenge to withholding under Exemption 3 is without merit.

## 2. Exemption 5

Section 552(b)(5) of FOIA exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5 incorporates the privileges that the Government could assert in discovery in a civil case, including the deliberative process privilege.  *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006).  To qualify for protection as deliberative process material, a document must be "predecisional" (that is "generated before the adoption of an agency policy") and "deliberative" (that is reflecting "the give-and-take of the consultative process").  *Public Citizen, Inc., v. OMB*, 598 F.3d 865, 874 (D.C. Cir. 2010) (citations and internal quotation omitted).

The FBI withheld a one-page record consisting of a FOIA analyst's notes.  Hardy Decl. ¶¶ 105-109; Supp. Hardy Decl. ¶¶ 14-16.  The document withheld is deliberative, as it contains the internal dialogue among FBI personnel about Plaintiffs' FOIA requests, and it is predecisional as it predates the final disposition of Plaintiffs' requests.  Supp. Hardy Decl. ¶ 16. The FBI, thus, properly invoked Exemption 5.

---

[5] Plaintiffs point out that the FBI mistakenly designated one document as exempt from production under Exemption (b)(3)–1, pertaining to grand jury information, when it should have been listed as exempt under Exemption (b)(3)–2, relating to the Bank Secrecy Act, 12 U.S.C. §§ 1829b, 1951-59 and 31 U.S.C. §§ 5311-5332.  This point is irrelevant, as Plaintiffs do not challenge withholdings under the Bank Secrecy Act.  *See* Opp'n at 9-10.

### 3. Exemptions 6, 7(C), and 7(D)

The FBI withheld information pursuant to Exemptions 6, 7(C), and 7(D), which exempt certain records from disclosure where disclosure would invade an individual's personal privacy or would breach an assurance of confidentiality. *See* 5 U.S.C. § 552(b)(6), (7)(C), (7)(D).

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Exemption 6 analysis has two components: (1) whether the information at issue is contained in personnel, medical, or similar files and (2) whether disclosure would constitute a clearly unwarranted invasion of personal privacy. "The term 'similar files' is broadly interpreted, such that Exemption 6 protects from disclosure all information that 'applies to a particular individual' in the absence of a public interest in disclosure." *Lardner v. Dep't of Justice*, 638 F. Supp. 2d 14, 23 (D.D.C. 2009) (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)), *aff'd*, 398 F. Appx. 609 (D.C. Cir. 2010). The threshold is "fairly minimal," and "[a]ll information which applies to a particular individual is covered by Exemption 6, regardless of the type of file in which it is contained." *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (quoting *Washington Post*, 456 U.S. at 602) (internal quotation omitted).

Exemption 6 requires a court to balance the individual's privacy rights against the basic purpose of FOIA—"to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation and citation omitted); *see Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). The privacy interest at stake belongs to the individual, not the agency. *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873,

875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address").  It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.  *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (interpreting analogous Exemption 7(C)).

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  Exemption 7(C) allows broad categorical protection of information that identifies third parties in law enforcement records.  *See Nation Magazine*, 71 F.3d at 896 (records revealing subjects, witnesses, and informants in law enforcement investigations are categorically exempt).  Like Exemption 6, Exemption 7(C) calls for balancing "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).

With respect to the Court's inquiry into the privacy interests and public interests at stake, the analysis under Exemptions 6 and 7(C) is substantially similar.  *Compare Stern v. FBI*, 737 F.2d 84, 91 (D.C. Cir. 1984) *with Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while the public interest in disclosure of their identities is "insubstantial."  *SafeCard*, 926 F.2d at 1205.  "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt

16

from disclosure." *Id*. at 1206; *see Nation Magazine*, 71 F.3d at 896.  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773).  A FOIA requester does not prevail in his efforts to obtain information about which an agency claims Exemption 6 or 7(C) protection merely by identifying a public interest.  Rather, the public interest in disclosure must be so compelling that, on balance, it outweighs the individual's legitimate privacy interests.  *See Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987).

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  A source's confidentiality is determined on a case-by-case basis, and a court must determine "whether the particular *source* spoke with an understanding that the communication would remain confidential."  *Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original).   "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation and citation omitted).  The nature of the crime investigated and the informant's relation to it are the most important factors in determining whether implied confidentiality exists.  *Landano*, 508 U.S. at 179-80.

Here, the FBI withheld certain records on the grounds that Exemptions 6, 7(C), and/or 7(D) applied. Hardy Decl. ¶¶ 112-22. The FBI withheld the names and identifying information of federal and state law enforcement officers and personnel, *id*. ¶¶ 113-19, as well as that of individuals who provided information to the FBI under implied assurances of confidentiality or who were merely third parties mentioned in the records. *Id.* ¶¶ 120-22. Plaintiffs provided executed privacy waivers for nine additional individuals, and asked the FBI to reprocess the FOIA requests. Opp'n at 12. The FBI agreed and reviewed the records for names and information associated with the nine individuals. The FBI did not find any additional records that could be released "as those names do not appear in the material that was processed as part of [P]laintiffs' FOIA requests." Supp. Hardy Decl. ¶ 17. As a result, the FBI has provided sufficient detailed information to support its application of Exemptions 6, 7(C), and 7(D).

### 4. Exemption 7(E)

FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), exempts records compiled for law enforcement purposes from release when disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigation or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." Exemption 7(E) may be applied to techniques and procedures that are unknown to the public, *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983), as well as known techniques and procedures if disclosure might reduce their effectiveness, *Coleman v. FBI*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998). While an agency may generally describe the nature of the information withheld, it is not required to describe secret law enforcement techniques, even generally, if the description would reveal the very information sought to be withheld. *Id.*

Plaintiffs demand that the FBI describe the nature of the records it withheld.  The FBI, however, has adequately explained the nature of the records it withheld and its reasons for doing so.  The FBI withheld records that could disclose procedures and techniques it uses in national security investigations.  Hardy Decl. ¶ 132.  It also withheld file numbers used in such investigations because such numbers might reveal investigative interests and priorities.  *Id*. ¶¶ 132-33.  Further, the FBI refused to disclose the location, identity, and expertise of the investigating FBI units, as this could allow an individual to avoid or circumvent those locations and those activities that are the targets of investigation.  *Id*. ¶¶ 135-37.  The FBI also withheld:

> (1) information contained in FOIA processing notes;
>
> (2) internal nonpublic telephone numbers and web site addresses used frequently by personnel to exchange investigative information;
>
> (3) database information and search results;
>
> (4) information collection and analysis information describing techniques; and
>
> (5) intelligence analyst procedures used by the Central Florida Intelligence Exchange to conduct national security investigations.

Supp. Hardy Decl. ¶ 18.  Release of such information would enable criminals to discover techniques and procedures and the effectiveness of law enforcement would suffer.  Accordingly, the FBI properly relied upon Exemption 7(E) in withholding certain records.

### D.  Exclusion of Records Under § 552(c)

Plaintiffs contend that the "FBI must clarify with the Court whether or not it has excluded any records under 5 U.S.C. § 552(c)."  Opp'n at 15.  FOIA section 552(c) permits agencies to treat sensitive law enforcement records as "not subject to the requirements" of FOIA.  This section excludes from disclosure (1) law enforcement records described in 5 U.S.C.

§ 552(b)(7)(A); (2) informant records; and (3) certain classified records.  5 U.S.C. § 552(c)(1)-

(3).  In other words, where a FOIA requester seeks to confirm the investigatory status of specific

individuals or incidents, § 552(c) permits the Government to provide a "Glomar" response, a

response that neither confirms nor denies that the Government has investigated or is

investigating the individual or the incident.[6]  *Benavides v. DEA*, 968 F.2d 1243, 1246-47 (D.C.

Cir. 1992), *modified on reh'g on other grounds*, 976 F.2d 751 (D.C. Cir. 1992).  Section 552(c)

"is a narrow and specific statutory authority for criminal law enforcement agencies to act on the

principal that 'an agency may refuse to confirm or deny the existence of records where to answer

the FOIA inquiry would cause harm cognizable under a FOIA exemption.'"  *Id.* (quoting

*Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)).  Section 552(c) provides an "exclusion,"

and not merely an "exemption" from FOIA.  "An 'exclusion' is different from an exemption in

that the Government need not even acknowledge the existence of excluded information."

*Steinberg v. DOJ*, Civ. No. 93-2409, 1997 WL 349997, at *1 (D.D.C. June 18, 1997).

DOJ policy provides that when the Government provides a Glomar response, it

must present a declaration to the court for in camera review.  "[W]herever a FOIA plaintiff raises

a distinct claim regarding the suspected use of an exclusion, the government routinely will

submit an *in camera* declaration addressing that claim, one way or the other."  DOJ, Att'y Gen.'s

Mem. on the 1986 Amendments to FOIA, § G (available at http://www.justice.gov/

oip/86agmemo.htm), § 5 "Additional Procedural Considerations" (last viewed on July 5, 2013);

---

[6] In *Phillippi v. CIA*, 546 F.2d 1009, 1011-12 (D.C. Cir. 1976), the CIA refused to confirm or deny existence of secret vessel, the "Hughes Glomar Explorer."  The nature of its response is now known as the "Glomar" response.  *See Nation Magazine*, 71 F.3d at 893 (Glomar response proper "if confirming or denying the existence of the records would associate the individual named in the request with criminal activity"); *Enzinna v. Dep't of Justice*, No. 97-5078, 1997 WL 404327, at *2 (D.C. Cir. June 30, 1997) (agency refusal to confirm or deny existence of responsive records appropriate because acknowledging existence of records would associate witnesses with criminal investigation).

*see Mobley v. CIA*, Civ. Nos. 11-2072 & 11-2073 (BAH), 2013 WL 452932, at *41-42 (D.D.C. Feb. 7, 2013) (pursuant to DOJ policy, Government presented an ex parte in camera submission for court review of the possible invocation of a § 552(c) exclusion). Thus, where a §522(c) exclusion is used, the in camera declaration asserts that it was justified; where a §522(c) exclusion is not used, the in camera declaration states that fact.

DOJ complied with this policy here. In response to Plaintiffs' demand for confirmation regarding whether the FBI excluded any records under 5 U.S.C. § 552(c), DOJ presented ex parte, for in camera review, the Ex Parte Declaration of Mr. Hardy. As Mr. Hardy explained:

> Because the very purpose of the exclusions is to keep a requester from knowing, for example, whether an individual is an informant unless the informant's status as an informant has been officially confirmed, 5 U.S.C. § 552(c)(2), it is vital to the integrity of the application of exclusions that requesters not be able to deduce whether an exclusion was or was not employed at all in any given case.

Third Hardy Decl. [Dkt. 21-1] ¶ 5.

The Court has reviewed Plaintiffs' claim and the ex parte Hardy Declaration and has determined that any § 552(c) exclusion, if employed, was amply justified. Plaintiffs' objections are unavailing.

**E. Segregability**

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after redacting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. Bureau of Prisons*, 927 F.2d 1239, 1242

n.4 (D.C. Cir. 1991).  Plaintiffs argue that the FBI failed to release reasonably segregable material.

Certain redacted materials were provided to Plaintiffs and other materials were withheld in full.  *See* Hardy Decl. ¶ 68 (the FBI sought to achieve "maximum disclosure" by releasing all material in the public domain and all reasonably segregable material); *id.* ¶¶ 69-72 (citing Ex. SS as emblematic of FBI's description of documents by Bates number and by the applicable FOIA exemption).  Material that was withheld was exempt from disclosure or was so intertwined with protected material that segregation was not possible.  *Id.* ¶¶ 69, 72.  The Court has reviewed the Government's declarations and finds that these submissions adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt."  *See Vaughn,* 484 F.2d at 827.  Further, with respect to the records withheld in full, the Court concurs that any nonexempt portions are so intertwined with exempt portions that no portion can be disclosed.

### F.  Timeliness of the FBI's Response

The FBI granted Plaintiffs' request for expedited processing, which requires release "as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  Even so, Plaintiffs allege that the FBI's responses to their FOIA requests were not timely, and that the FBI acted arbitrarily by responding first to later FOIA requesters.  For instance, in response to a March 8, 2012 FOIA request from the ACLU-NC, the FBI released thirteen pages within five months, on August 24, 2012.  In response to a November 16, 2011 FOIA request from the Partnership for Civil Justice Fund (PCJF), the FBI released ninety-nine pages within thirteen months, on December 18, 2012.  Among the records released to ACLU-NC and PCJF were certain records that also were responsive to Plaintiffs' requests.

As described above, Plaintiffs made six FOIA requests between October 31, 2011 and June 4, 2012, and the FBI issued its final release of records to all requests on January 10, 2013, *i.e.* within approximately seven months of Plaintiffs' fifth request and within approximately thirteen months of their first request.  While these time frames are not materially different from the five and thirteen months in which the FBI responded to the PCJF and the ACLU-NU, Plaintiffs mischaracterize the response to their requests as unreasonably delayed and ask the Court to refer the FBI to the Office of Special Counsel for investigation.  *See* Opp'n at 16-18.  Plaintiffs' claim of wrongful delay and arbitrary action by the FBI is unfounded.  The ACLU-NC and the PCJF each made only one FOIA request, while Plaintiffs made *six* separate FOIA requests.  Further, many of Plaintiffs' requests contained specific criteria, such as date parameters, thereby compelling the FBI to take additional time to sort through its records to remove nonresponsive records.  In addition, the FBI took the extra step of conducting text searches of the ECF to identify potentially responsive material.  Hardy Decl. ¶ 66; Supp. Hardy Decl. ¶ 7.  The FBI cannot be faulted for being thorough in its searches.  Plaintiffs' request for a special investigation is baseless.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss or for summary judgment [Dkt. 9] will be granted.  Judgment will be entered in favor of Defendant.  A memorializing Order accompanies this Memorandum Opinion.


Date:  July 17, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge
