IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUTHOUT and JEFFREY LIGHT, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> U.S. DEPARTMENT OF JUSTICE, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 12-CV-01660 |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 268 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General and FBI policies and procedures; judicial decisions;

and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am familiar with the FBI's handling of plaintiffs' FOIA requests to FBIHQ seeking access to records pertaining to various "Occupy" movement matters.

(4) This declaration supplements and hereby incorporates by reference the information provided in my prior declarations submitted in this case dated January 31, 2013 ("Hardy Declaration"), May 1, 2013 ("Supplemental Hardy Declaration"), and May 2, 2013 ("Third Hardy Declaration"). The purpose of this declaration is to respond to specific issues raised by plaintiffs in their Motion for Partial Reconsideration.

(5) Plaintiffs allege that the Court mistakenly held the FBI was not required to search records systems in addition to the Central Records System ("CRS") and therefore, the Court should reconsider its position to order the FBI to conduct additional searches of the Electronic Surveillances Indices ("ELSUR") as well as shared drives.

(6) The FBI provided a detailed explanation of the searches conducted in response to plaintiffs' FOIA requests in two of my prior declarations. *See* Hardy Declaration ¶¶ 65 and 66, and Supplemental Hardy Declaration, ¶¶ 5-11). To summarize, the FBI conducted searches of the CRS via the Automatic Case Support ("ACS") system utilizing two of the automated application tools: (1) the Universal Case Index ("UNI") and (2) the Electronic Case File ("ECF").[1] As

---

[1] As explained in footnote 5 of the Hardy Declaration, it is not the FBI's policy to conduct text searches of the ECF in every case.

described in the Hardy Declaration, the FBI used 43 different search terms when it conducted searches of the CRS for records potentially responsive to plaintiffs' FOIA requests. For clarity, the FBI used the UNI application of ACS to run the 43 search term variations through the CRS. In selecting these search terms, the FBI considered potential logical CRS indexing possibilities. The FBI released all non-exempt records located as a result of these searches to plaintiffs by letter dated January 10, 2013. *See* Hardy Declaration, ¶¶ 12, 24, 32, 43, and 58.

(6) Plaintiffs contend that an FBI Intelligence Watch Report processed as part of an unrelated litigation was actually responsive to at least one of plaintiffs' numerous FOIA requests in this case. While it is true that the report may have been responsive to a number of plaintiffs' requests, the report was not indexed in such a way so that the FBI would have been able to locate it through its searches of the CRS. As I have explained previously, the decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, the SSA at FBIHQ, and other FBI support personnel involved with the investigation. *See* Hardy Declaration, ¶ 64. The FBI does not index every name in its files; rather, it indexes only that information it considers to be pertinent, relevant, or essential for future retrieval. *See id.* In this case, the report identified by plaintiffs was not indexed in such a way so that the FBI would have been able to retrieve it using any of the 43 search terms it used here; it is therefore not surprising that the FBI was not able to locate it during its CRS search or as part of its text search of the EFC. In contrast, the report that was released by the FBI in the context of the *Shapiro v. DOJ*, Civ. A. No. 13-CV-596 (D.DC.) litigation, was specifically requested by plaintiff. The FBI did not locate the report by conducting a CRS search, not a surprising fact since the report was not indexed in such a way so as to allow for its identification.

3

Instead, the FBI resorted to a targeted search for that particular report, which included, RIDS personnel following specific leads contained in documents produced in that litigation in order to locate this report. Nevertheless, the FBI is now releasing to plaintiffs the referenced report so as to end further debate regarding its production. (*See* **Exhibit A.**)

## THE ELSUR INDICES

(7) The Electronic Surveillance ("ELSUR") Indices, a separate system of records from the CRS, are used to maintain information on subjects whose electronic and/or voice communications have been intercepted as a result of warrantless and/or consensual electronic surveillance, or court-ordered electronic surveillance conducted by the FBI. The ELSUR Indices date back to January 1, 1960, and were automated in 1991. Since 1991, FBIHQ and all FBI field offices have electronically generated, maintained, modified, and accessed all ELSUR records.

(8) Prior to automation, the ELSUR Indices consisted of index cards identifying individuals who had been the subjects of microphone or telephone surveillance by the FBI since 1960. The FBI converted its manual index card system to an automated system on or about October 9, 1991. In addition to individuals who were the targets of surveillance, other participants in monitored conversations and the owners, lessees, or licensors of the premises where the FBI conducted the electronic surveillance are also indexed. Moreover, the ELSUR Indices include the dates an individual was monitored; a confidential identification symbol number to identify the individual being monitored; and the location of the FBI field office that conducted the surveillance. The ELSUR Indices are published as a separate records system in the Federal Register because not all names of individuals contained in the ELSUR Indices can be retrieved through the General Indices of the CRS. *See* 52 Fed. Reg. 8482.

(9) FBI field offices that have conducted electronic surveillance at any time since 1960 also maintain ELSUR Indices. Since January 1, 1960, field offices have been including their ELSUR Indices and reporting to FBIHQ for inclusion in its ELSUR Index, the names of all individuals whose voices have been monitored through an FBI microphone installation or telephone surveillance. The names of monitored individuals are retrieved through the FBIHQ or local field office ELSUR Indices.

(10) Until 1969, FBI field offices were also required to forward to FBIHQ the names of all individuals mentioned during monitored conversations ("overhears") for inclusion in the FBIHQ ELSUR Index. Although FBIHQ discontinued this requirement in 1969, some field offices continued to include the names of individuals mentioned in monitored conversations in their field office ELSUR Indices. However, the names of such individuals cannot be retrieved through the FBIHQ ELSUR Index.

## SEARCH OF THE ELSUR INDICES

(11) In response to plaintiffs' allegations concerning the search of the ELSUR Indices, the FBI's standard practice at the administrative stage is to search for ELSUR records only when a requester specifically makes such a request, or if factual information contained in records the FBI has retrieved from the CRS reasonably indicate that responsive ELSUR records may exist. As a result of a further review of plaintiffs' requests, the FBI now notes that an ELSUR search was in fact requested by plaintiff Jeffrey Light in his November 16, 2011 FOIA request (FOIPA No. 1177831). Plaintiffs failed to specifically request ELSUR Indices searches in their remaining FOIA requests. And the FBI did not locate any other documents during its search which would have led it to conclude that an ELSUR Indices responsive to their requests.

(12) On or about November 28, 2011, the FBI conducted a search of the ELSUR Indices in response to plaintiff Jeffrey Light's November 16, 2011 FOIA request.[2] As a result of this search, the FBI did not locate any responsive ELSUR records.[3]

(13) Finally, plaintiffs allege that the FBI's search was inadequate since it failed to include a search of shared drives.[4] The FBI's position continues to be that a search of the CRS was adequate, as it is the system most reasonably likely to yield potentially responsive records, should they exist. As I previously stated in the First Hardy Declaration, ¶ 59, and the Supplemental Hardy Declaration, ¶ 5, the CRS is a centralized FBI records system consisting of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. Given its comprehensive nature, the CRS is the principal records system used by RIDS to search for and locate records potentially responsive to FOIA requests. Given the nature of the records requested by plaintiffs, the CRS is the most likely FBI system of records where responsive records would reasonably reside absent additional information pointing to records that may reside outside the CRS.[5] As relevant here, there was no factual basis for the FBI to conclude from the records that it did locate that records responsive to plaintiffs' requests would reside in any shared drive or records systems outside the CRS. As a result, the FBI's decision that a search of unspecified shared drives would be unduly burdensome and not reasonably calculated to locate

---

[2] As noted earlier, although the FBI did conduct a search of the ELSUR Indices at the administrative stage in response to plaintiff Light's FOIA request, the FBI inadvertently failed to notify plaintiff that it had conducted a search and that it had not located any responsive records.

[3] The FBI conducted an ELSUR search by using the same 43 search terms used during the search of the CRS.

[4] Plaintiffs' original requests did not specify that the FBI conduct a search of shared drives.

[5] As I have explained earlier, the CRS searches performed by the FBI would have identified both potentially responsive "main" files as well as "cross-reference" files.

responsive records was based on sound administrative practice and experience, and should be entitled to deference by the court.

## CONCLUSION

(14)   The FBI has conducted a reasonable search for records responsive to plaintiffs' FOIA requests and has released all segregable, non-exempt information to plaintiffs.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this ⎯11th⎯ day of September, 2013.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRUTHOUT and JEFFREY LIGHT, ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 12-CV-01660 |
| DEPARTMENT OF JUSTICE, ) | |
| Defendant. ) | |

**EXHIBIT A**

SECRET/[ ]/ORCON/NOFORN [ ] LES

CLASSIFIED BY NSICG F54M93K42
REASON: 1.4 (b,c,d)
DECLASSIFY ON: 06-17-2038

b7E -1
Category (f)



# FBI Intelligence Watch Report

**P.M. Report**  **12 October 2011**

## HIGHLIGHTS

(U//LES) [ ] **Plans to Engage in Attacks against Protestors in Houston**  b7A
(U//LES) An identified [ ] as of October planned to engage in sniper attacks against protestors  b7D -2
in Houston, Texas, if deemed necessary, according to a collaborative source with excellent access, much of whose  b7E -1
reporting has been corroborated over the past four years. An indentified [ ] had received  Category (d)
intelligence that indicated the protesters in New York and Seattle planned similar protests in Houston, Dallas, San
Antonio, and Austin, Texas [ ] planned to gather intelligence against the leaders of the protest groups and
obtain photographs, then formulate a plan to kill the leadership via suppressed sniper rifles. (Source: FBI IIR [ ]
[ ]

(U//LES) I-Watch Comment: Historically, some [ ] of their local
areas and communities [ ] have the potential to engage in violence if they consider themselves [ ]
[ ] (Source: [ ]

(S) [ Outside the Scope ]

(S)

(S)

**THIS DOCUMENT IS INTERNAL AND NOT RELEASABLE OUTSIDE THE FBI WITHOUT PRIOR AUTHORIZATION.**  b7E -1
Questions regarding this report can be addressed to the Intelligence Watch at [ ] The information cutoff time for  Category (f)
this report was 1400 12 October 2011. This product has been [ ]

SECRET/[ ]/ORCON/NOFORN [ ] LES   b7E -1
Category (f)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE